BOOTH NEWSPAPERS, INC v 12TH DISTRICT COURT JUDGE

Docket Nos. 101685, 101784. Submitted April 19, 1988, at Lansing. Decided November 7, 1988.

On May 8, 1987, the 12th District Court entered an order closing the preliminary examination of Edward C. Hill to the public and press. Hill, a prison inmate at the State Prison of Southern Michigan, was accused of sexually assaulting and murdering a corrections officer at the prison. Plaintiff Booth Newspapers, Inc., doing business as the Jackson Citizen Patriot, moved to intervene in the district court to challenge the suppression order. The district court took the matter under advisement. Prior to the district court's decision, the plaintiffs, Booth Newspapers, Detroit News, Inc., and Detroit Free Press, Inc., filed a complaint for superintending control in the Jackson Circuit Court requesting that the court vacate the district court's suppression order. The district court then ruled that the statute which allowed for the closing of the preliminary examination was constitutional and refused to lift the suppression order. The circuit court, Alexander C. Perlos, J., considering the Jackson Citizen Patriot's complaint as an application for an emergency appeal, upheld the district court's suppression order. The Detroit News and Detroit Free Press appealed as of right from the order and Booth Newspapers, Inc., appealed by leave granted from the same order. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. MCL 750.520k; MSA 28.788(11), the statute on which the district court relied in closing the preliminary examination, violates the First Amendment as applied to the states through the Fourteenth Amendment.

2. Preliminary examination proceedings cannot be closed

REFERENCES

Am Jur 2d, Criminal Law §§ 841, 883 *et seq.*

Federal constitutional right to public trial in criminal case—federal cases. 61 L Ed 2d 1018.

Validity and construction of constitution or statute authorizing exclusion of public in sex offense cases. 39 ALR3d 852.

Exclusion of public during criminal trial. 48 ALR2d 1436.

See the Index to Annotations under Criminal Law.

unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest, because a qualified First Amendment right of access applies to such proceedings in Michigan. If the interest asserted is the accused's right to a fair trial, the preliminary hearing shall be closed only if specific findings are made showing that (1) there is a substantial probability that the accused's right to a fair trial will be prejudiced by publicity that closure would prevent, and (2) reasonable alternatives to closure would not adequately protect the accused's fair trial right.

3. Because closure is mandatory under MCL 750.520k; MSA 28.788(11) upon the request of the victim or the accused without first requiring specific findings to be made, the statute is unconstitutional on its face as violative of the public's First Amendment right of access.

4. The suppression order here did not serve the interests sought to be protected and, even if it did, it was not narrowly tailored and reasonable alternatives existed which would have protected the accused's fair trial right.

Reversed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — FIRST AMENDMENT.

Two complementary considerations are emphasized when determining whether a First Amendment right of access attaches to a criminal proceeding at issue: (1) whether the place and process have historically been open to the press and general public, and (2) whether public access plays a significant positive role in the functioning of the particular process in question; a qualified First Amendment right of public access applies if the particular proceeding at issue passes these tests (US Const, Am I).

2. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — CLOSURE.

Preliminary examinations in Michigan cannot be closed to the press and general public, since a qualified First Amendment right of access applies to such examinations, unless specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest; a preliminary hearing shall be closed, where the interest asserted is the accused's right to a fair trial, only if specific findings are made showing that (1) there is a substantial probability that the accused's right to a fair trial will be prejudiced by publicity that closure would prevent, and

(2) reasonable alternatives to closure would not adequately protect the accused's fair trial right (US Const, Am I).

3. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — CLOSURE.
   The statute requiring closure of a preliminary examination upon the request of the victim or the accused without first requiring specific findings to be made is unconstitutional on its face as violative of the public's First Amendment right of access to such examinations (US Const, Am I; MCL 750.520k; MSA 28.788[11]).

*Aymond, Sullivan, Whedon & Thompson, P.C.* (by *Dennis E. Whedon*), for Booth Newspapers, Inc.

*Butzel, Long, Gust, Klein & Van Zile* (by *Richard E. Rassel, James E. Stewart,* and *J. Michael Huget*), for Detroit News, Inc.

*Honigman, Miller, Schwartz & Cohn* (by *Herschel P. Fink* and *Brian D. Figot*), for Detroit Free Press, Inc.

*Joseph S. Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the 12th District Court Judge.

Before: KELLY, P.J., and SULLIVAN and M. J. SHAMO,* JJ.

SULLIVAN, J. Plaintiffs Detroit News and Detroit Free Press appeal as of right a June 15, 1987, circuit court order dismissing their complaint for superintending control. Plaintiff Booth Newspapers, Inc., doing business as the Jackson Citizen Patriot, appeals by leave granted the same circuit court order which also denied its emergency appeal of a district court order. These appeals were consolidated. We reverse.

This case arises out of the May 8, 1987, district

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

court suppression order closing the preliminary examination of Edward C. Hill to the public and press. Hill was a prison inmate at the State Prison of Southern Michigan who was accused of sexually assaulting and murdering a corrections officer at the prison. Upon the request of the victim's family and the accused, the district court closed the accused's preliminary examination under MCL 750.520k; MSA 28.788(11).

A few days before the preliminary examination, the Jackson Citizen Patriot made a motion to intervene, in district court, in order to challenge the suppression order. After a hearing was conducted, the district court took the matter under advisement. In the meantime, prior to the district court's decision, all the plaintiffs filed a complaint for superintending control in circuit court, requesting that the court vacate the district court's suppression order. Plaintiffs' argument to both the district and circuit courts was that MCL 750.520k; MSA 28.788(11), the statute on which the district court relied in closing the preliminary examination, is unconstitutional. US Const, Ams I, XIV.

On the morning of the preliminary examination, the district court ruled that MCL 750.520k; MSA 28.788(11) is constitutional and refused to lift the suppression order. Later that same day, the circuit court addressed plaintiffs' complaint for superintending control, but considered the complaint as to the Jackson Citizen Patriot as an application for an emergency appeal. The circuit court upheld the district court's suppression order in the order from which plaintiffs now appeal.[1]

The accused's preliminary examination was

[1] Because the accused's preliminary examination and arraignment on the information have already been conducted and because the transcript of the preliminary examination was apparently released following the arraignment on the information, the issue on appeal appears moot. However, we will consider it if it is of public signifi-

closed under MCL 750.520k; MSA 28.788(11), which provides:

> Upon the request of the counsel or the victim or actor in a prosecution under sections 520b to 520g [codifying various types of criminal sexual conduct and respective penalties] the magistrate before whom any person is brought on a charge of having committed an offense under sections 520b to 520g shall order that the names of the victim and actor and details of the alleged offense be suppressed until such time as the actor is arraigned on the information, the charge is dismissed, or the case is otherwise concluded, whichever occurs first.

This statute implicitly requires that, upon a proper request, the preliminary examination be closed to the public. *In re Midland Publishing Co, Inc,* 420 Mich 148, 159, n 13, 175; 362 NW2d 580 (1984). Plaintiffs contend that this statute violates the First Amendment as applied to the states through the Fourteenth Amendment. We agree.

Our Supreme Court previously upheld the constitutionality of MCL 750.520k; MSA 28.788(11) in *In re Midland Publishing, supra,* wherein the Court held that the public has no common-law or constitutional right of access to preliminary examinations. *Id.,* pp 162, 164. In concluding that the public has no common-law right of access to preliminary examinations, the Court relied on the historical analyses of prior United States Supreme Court cases. In concluding that the public has no federal constitutional right of access to preliminary examinations, the Court cited the Fifth

cance and is likely to recur, yet evade judicial review. *Press-Enterprise Co v Superior Court,* 478 US 1, 6; 106 S Ct 2735; 92 L Ed 2d 1 (1986); *In re Midland Publishing Co, Inc,* 420 Mich 148, 151-152, n 2; 362 NW2d 580 (1984). Plaintiffs might be subjected to a similar suppression order and, because criminal proceedings are typically of short duration, such an order will likely evade review. *Press-Enterprise,* 478 US 6. Therefore, we will consider the issue.

Amendment reference to "presentment or indictment of a Grand Jury" and, then, noted that "[s]ince grand jury proceedings have historically been conducted in the absence of the public, there is no precedent for the United States Supreme Court, pursuant to an historical analysis, to extend the public's First Amendment right of access to probable cause determinations." *Id.,* p 174.

However, the United States Supreme Court subsequently held that a First Amendment right of access, in fact, applies to preliminary hearings as conducted in California. *Press-Enterprise Co v Superior Court,* 478 US 1, 13; 106 S Ct 2735; 92 L Ed 2d 1 (1986) *(Press-Enterprise II).* In *Press-Enterprise II,* the accused's forty-one-day preliminary hearing was closed to the public upon the accused's request under a California statute which required such proceedings to be open unless "exclusion of the public is necessary in order to protect the defendant's right to a fair and impartial trial." *Id.,* p 4. The transcripts of the preliminary hearing were not released until the accused waived his right to a jury trial.

Two "complementary considerations" are emphasized when determining whether a First Amendment right of access attaches to the criminal proceeding at issue: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.,* p 8. If the particular proceeding at issue passes these tests of "experience and logic," a qualified First Amendment right of public access attaches.

The *Press-Enterprise II* Court found that preliminary hearings conducted before neutral and detached magistrates have traditionally been open to the public and that preliminary hearings as con-

ducted in California are sufficiently like a trial to justify the conclusion that public access to them is essential to the proper functioning of the criminal justice system. *Id.,* pp 10-12. Because preliminary hearings as conducted in California pass the tests of "experience and logic," a qualified First Amendment right of access applies. *Id.,* p 13.

Because a qualified First Amendment right of access applies to preliminary examinations, the proceedings cannot be closed unless "specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.,* pp 13-14, citing *Press-Enterprise Co v Superior Court,* 464 US 501, 510; 104 S Ct 819; 78 L Ed 2d 629 (1984). If the interest asserted is the accused's right to a fair trial, the preliminary hearing shall be closed only if specific findings are made showing that (1) there is a substantial probability that the accused's right to a fair trial will be prejudiced by publicity that closure would prevent, and (2) reasonable alternatives to closure would not adequately protect the accused's fair trial right. *Press-Enterprise II,* p 14.

Preliminary hearings as conducted in California are substantially similar to those conducted in Michigan. See, for example, *Press-Enterprise II,* p 12; *People v Bellanca,* 386 Mich 708; 194 NW2d 863 (1972); *People v Charles D Walker,* 385 Mich 565, 575; 189 NW2d 234 (1971); *People v Thomas,* 96 Mich App 210, 216; 292 NW2d 523 (1980). Therefore, under *Press-Enterprise II,* a qualified First Amendment right of access applies to preliminary examinations as conducted in Michigan. Because closure is mandatory under MCL 750.520k; MSA 28.788(11) upon the request of the victim or the accused without first requiring specific findings

to be made, the statute is unconstitutional on its face as violative of the public's First Amendment right of access. See *Globe Newspaper Co v Superior Court,* 457 US 596; 102 S Ct 2613; 73 L Ed 2d 248 (1982).

Perhaps in anticipation of this conclusion, the district court balanced the competing interests involved in this case. It found that the accused's right to a fair trial and protecting the victims of a crime are legitimate and compelling governmental interests and that these interests have a higher value than the news media's First Amendment right of access.

However, under MCL 750.520k; MSA 28.788(11) and the terms of the district court's order, the suppression was to be lifted, at the latest, when the accused was arraigned on the information. At that time, the transcript of the preliminary examination would be made available. Hence, the extent of the closure would not even prevent pretrial publicity and pretrial publicity is what the district court was trying to avoid for the benefit of both the accused and the victim's family. Moreover, voir dire was available as a reasonable alternative to eliminate any prejudice to the accused. Finally, in order to protect the victim's family, the district court could have closed only that part of the preliminary examination in which the victim's husband testified.

Because the suppression order did not serve the interests sought to be protected and, even if it did, it was not narrowly tailored and because a reasonable alternative existed which would have protected the accused's fair trial right, the circuit court should have lifted the district court's suppression order. Accordingly, we reverse.

Reversed.